Affirmed by published opinion. Judge NIEMEYER wrote the majority opinion, in which Judge SHEDD joined. Judge KING wrote a dissenting opinion.
OPINION
NIEMEYER, Circuit Judge:
This appeal presents the question whether Torrell Vann’s sentence for possessing a firearm, in violation of 18 U.S.C. § 922(g), was properly enhanced under the Armed Career Criminal Act (“ACCA”), 18 U.S.C. § 924(e), based on three previous convictions in North Carolina for taking indecent liberties with a child, in violation of N.C. Gen.Stat. § 14-202.1. To constitute a predicate offense under ACCA, a conviction must be either for a “serious drug offense” or for a “violent felony,” as defined in § 924(e)(2)(B) and interpreted by Begay v. United States, 553 U.S. 137, 128 S.Ct. 1581, 170 L.Ed.2d 490 (2008). The district court relied on the North Carolina convictions to enhance Vann’s sentence, and Vann challenges this ruling on appeal.
Because North Carolina’s indecent liberties statute encompasses at least two separate crimes, we employ the modified categorical approach articulated in Taylor v. United States, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), and Shepard v. United States, 544 U.S. 13, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005), and conclude (1) that Vann’s three prior convictions were based on his taking indecent liberties with a child by willfully committing a lewd or lascivious act upon the body of a child under the age of 16 and (2) that, as so formulated, his convictions were for violent felonies that serve as predicate offenses under ACCA. Accordingly, we affirm.
I
In the early morning hours of January 20, 2008, officers in Lumberton, North Carolina, responded to a 911 call from an ex-girlfriend of Torrell Vann, complaining that Vann was insisting that he be let inside her house. By the time officers arrived, however, Vann had left. About an hour later, Vann returned and entered the ex-girlfriend’s house through an unlocked back door. When the ex-girlfriend asked him to leave, Vann pulled out a pistol, put it to his head, and threatened to kill himself if she would not talk to him. Although Vann put the weapon away when the ex-girlfriend became upset and eventually left the residence, the ex-girlfriend again called the police. A short time later, officers stopped Vann’s vehicle, finding that his speech was slurred, his license had been suspended, and he was in possession of a Bersa .380 pistol and ammunition.
Vann was charged with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), and the indictment included the allegation that Vann had three previous convictions for “violent felonies,” as defined in 18 U.S.C. § 924(e)(2)(B). Vann pleaded guilty to the charge pursuant to a written plea agreement.
In the presentence report, the probation officer found that Vann qualified as an armed career criminal under ACCA based on his three previous North Carolina con *433 victions for taking indecent liberties with a child, in violation of N.C. Gen.Stat. § 14-202.1. Taking into account the ACCA enhancement, the probation officer calculated Vann’s sentencing range under the Sentencing Guidelines as 180 to 210 months’ imprisonment, with a mandatory minimum sentence of 180 months’ imprisonment.
Vann objected to being classified as an armed career criminal, arguing that under Begay and United States v. Thornton, 554 F.3d 443 (4th Cir.2009) (holding that Virginia’s carnal knowledge offense is not a violent felony under ACCA), his indecent liberties convictions were not for violent felonies for purposes of ACCA. The government argued that the issue was essentially controlled by United States v. Pierce, 278 F.3d 282 (4th Cir.2002) (holding that the offense of taking indecent liberties with a child, in violation of N.C. Gen.Stat. § 14-202.1, was a “crime of violence” for purposes of the career-offender enhancement under U.S.S.G. §§ 4B1.1, 4B1.2(a)).
The district court overruled Vann’s objection, applied an enhancement under ACCA, and sentenced Vann to 180 months’ imprisonment. This appeal followed.
II
A violation of 18 U.S.C. § 922(g) ordinarily carries a maximum sentence of 10 years’ imprisonment. 18 U.S.C. § 924(a)(2). But ACCA provides a sentencing enhancement based on the defendant’s criminal history, providing that a person who has “three previous convictions ... for a violent felony or a serious drug offense, or both, committed on occasions different from one another” must be sentenced to at least 15 years’ imprisonment. Id. § 924(e)(1). The Act defines a “violent felony” as “any crime punishable by imprisonment for a term exceeding one year” that:
(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
(ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another[.]
Id. § 924(e)(2)(B).
The government contends that Vann’s three prior convictions for taking indecent liberties with a child, in violation of N.C. Gen.Stat. § 14-202.1, are convictions for violent felonies within the meaning of ACCA, relying on our decision in Pierce, which held that a violation of the North Carolina indecent liberties statute categorically constitutes a “crime of violence,” as that term is defined in the context of the Sentencing Guidelines’ career-offender enhancement. See Pierce, 278 F.3d at 284. In Pierce, we found that the offense prohibited by the North Carolina statute involved conduct that, “ ‘by its nature, presentís] a serious potential risk of physical injury to another,’” id. at 286 (quoting U.S.S.G. § 4B1.2, cmt. n.l), and also that the offense qualified as a “forcible sex offense” — which the Sentencing Guidelines’ application notes explicitly list as a “crime of violence,” see U.S.S.G. § 4B1.2, cmt. n.l — because “[t]he North Carolina courts have consistently held that constructive force may be inferred in sexual abuse cases involving children,” 278 F.3d at 289. The government argues that Pierce’s holding, even though made in the context of the Sentencing Guidelines, nonetheless requires us to find that the North Carolina crime “has as an element the use, attempted use, or threatened use of physical force against the person of another,” making it a violent felony under ACCA. 18 U.S.C. § 924(e)(2)(B)®. The government also maintains that the offense qualifies as a violent felony because, as Pierce *434 recognized, it “involves conduct that presents a serious potential risk of physical injury to another,” which is an alternative definition of a violent felony under ACCA. Id. § 924(e) (2) (B) (ii).
In contrast, Vann asserts that Pierce has been effectively overruled by the Supreme Court’s holding in Begay that § 924(e)(2)(B)(ii) does not cover “every crime that presents a serious potential risk of physical injury to another,” but only those “that are roughly similar, in kind as well as in degree of risk posed, to the examples” included in the definition of “violent felony” — namely, burglary, arson, extortion, and crimes involving the use of explosives. Begay, 553 U.S. at 142-43, 128 S.Ct. 1581 (internal quotation marks omitted). Vann contends further that holdings by North Carolina courts that a defendant need not touch the victim or, indeed, even be in the actual presence of the victim to violate the statute demonstrate that the taking indecent liberties offense does not have “as an element the use, attempted use, or threatened use of physical force against the person of another.” 18 U.S.C. § 924(e)(2)(B)®. Vann also argues that we should be guided by Thornton, a postBegay decision, in which we held that Virginia’s carnal knowledge offense — which makes it a crime to “carnally know[ ], without the use of force,” a child who is between 13 and 15 years old — is not a “violent felony” under ACCA. See Thornton, 554 F.3d at 444 (quoting Va.Code Ann. § 18.2-63).
The issue thus framed is whether a violation of North Carolina’s indecent liberties statute is a “violent felony,” as defined in § 924(e)(2)(B) and interpreted by Be-gay.
To make that determination, ACCA requires application of a categorical approach by which the elements of the statute of conviction, not the facts supporting conviction, are evaluated to determine whether the crime qualifies as a predicate offense under ACCA. See Taylor v. United States, 495 U.S. 575, 599-602, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990); Chambers v. United States, — U.S. -, 129 S.Ct. 687, 690, 172 L.Ed.2d 484 (2009) (“[ACCA’s] defining language, read naturally, uses ‘felony’ to refer to a crime as generally committed. And by so construing the statute, one avoids the practical difficulty of trying to ascertain at sentencing ... whether the present defendant’s prior crime, as committed on a particular occasion, did or did not involve violent behavior”). The Supreme Court first announced this principle in Taylor, holding that “the only plausible interpretation of [ACCA] is that ... it generally requires the trial court to look only to the fact of conviction and the statutory definition of the prior offense.” 495 U.S. at 602, 110 S.Ct. 2143. The Court qualified this general principle, however, by adding that the categorical approach may be modified to “permit the sentencing court to go beyond the mere fact of conviction in a narrow range of cases where a jury was actually required to find all the elements of [a qualifying offense]” in order to convict the defendant. Id.
The full scope of this “modified categorical approach” was refined in Shepard v. United States, 544 U.S. 13, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005), where the Court applied Taylor to convictions based on guilty pleas. The Court held that the Tayior-approved modification to a strict categorical approach for identifying convictions for predicate offenses was not limited to convictions obtained through a jury trial. Id. at 19, 125 S.Ct. 1254. Rather, for cases tried without a jury, a sentencing court may also consider the “bench-trial judge’s formal rulings of law and findings of fact” and, for pleaded cases, the court may examine “the statement of factual basis for the charge, Fed. Rule Crim. Proc. 11(a)(3), shown by a transcript of plea *435 colloquy or by written plea agreement presented to the court, or by a record of comparable findings of fact adopted by the defendant upon entering the plea.” Id. at 20,125 S.Ct. 1254.
In two recent cases, the Supreme Court has further clarified the ACCA analysis by addressing how to determine whether the statute under which the defendant was convicted is subject to the modified categorical approach. See Chambers, 129 S.Ct. at 690-91; Johnson v. United States, — U.S. -, 130 S.Ct. 1265, 1273, 176 L.Ed.2d 1 (2010). Emphasizing that the “categorical approach requires courts to choose the right category,” Chambers recognized that the statute of conviction may proscribe different kinds of behavior, which, if sufficiently distinct, may constitute different crimes for ACCA purposes. 129 S.Ct. at 690. In Chambers, for example, the defendant had been convicted of a statute that prohibited
(1) escape from a penal institution, (2) escape from the custody of an employee of a penal institution, (3) failing to report to a penal institution, (4) failing to report for periodic imprisonment, (5) failing to return from furlough, (6) failing to return from work and day release, and (7) failing to abide by the terms of home confinement.
Id. at 691 (citing 111. Comp. Stat., ch. 720, § 5/31 — 6(a)). The Court held that statutory phrases (1) and (2), which prohibited escape from custody, constituted a category of behavior distinct from the behavior prohibited in statutory phrases (3)-(6), all of which prohibited the similar form of behavior of failing to report or to return to custody. Id. It therefore treated statutory phrases (1) and (2) as a single category and phrases (3)(6) as a single category, concluding that the statute of conviction should be treated “for ACCA purposes as containing at least two separate crimes, namely escape from custody on the one hand, and a failure to report on the other.” Id. It also observed that “[t]he behavior that likely underlies a failure to report would seem less likely to involve a risk of physical harm than the less passive, more aggressive behavior underlying an escape from custody.” Id. Because the state-court information showed that Chambers had pleaded guilty to the generic crime of failing to report, the Court concluded that his conviction was not for an offense that satisfied ACCA’s definition of “violent felony.” Id. at 691-93.
Similarly, in Johnson, the Supreme Court evaluated a conviction under Florida’s simple battery statute, which allowed conviction if the prosecution proved “that the defendant ‘[ijntentionally cause[ed] bodily harm,’ that he ‘intentionally str[uck]’ the victim, or that he merely ‘[a]ctually and intentionally touche[d]’ the victim.” 130 S.Ct. at 1269 (quoting Fla. Stat. § 784.03(l)(a)). Because no Shepard-approved material showed which type of battery resulted in Johnson’s conviction, the Court held the conviction could not count as an ACCA predicate because “the least of these acts” — “[ajetually and intentionally touch[ing]” another — was not a violent felony under ACCA. Id. at 1269. The Court made clear, however, that if Shepard-approved material had shown the defendant’s battery conviction was based on the separate crime of “intentionally causing] bodily harm,” then the conviction would have qualified the defendant for a sentencing enhancement under ACCA. The Court explained:
When the law under which the defendant has been convicted contains statutory phrases that cover several different generic crimes ... the “modified categorical approach” that we have approved permits a court to determine which statutory phrase was the basis for the conviction by consulting the trial record— including charging documents, plea agreements, transcripts of plea eolio *436 quies, findings of fact and conclusions of law from a bench trial, and jury instructions and verdict forms.
Id. at 1273 (internal citation omitted); see also United States v. Rivers, 595 F.3d 558, 564 (4th Cir.2010) (holding that it is appropriate to apply the modified categorical approach when “different types of behavior satisfy an element of the offense and the proscribed behaviors constitute at least two separate crimes for ACCA purposes”). Thus, we must begin by examining the statute of conviction to determine whether it covers more than one generic crime to ensure that we are using “the right category.” Chambers, 129 S.Ct. at 690.
The North Carolina statute criminalizing the taking of indecent liberties with children does in fact contain phrases that cover two different generic crimes. One requires physical acts against the body of a child, and the other does not. The statute provides that a defendant who is “16 years of age or more and at least five years older than the child in question” is guilty of taking indecent liberties with the child if he either:
(1) Willfully takes or attempts to take any immoral, improper, or indecent liberties with any child of either sex under the age of 16 years for the purpose of arousing or gratifying sexual desire; or
(2) Willfully commits or attempts to commit any lewd or lascivious act upon or with the body or any part or member of the body of any child of either sex under the age of 16 years.
N.C. Gen.Stat. § 14-202.1(a) (emphasis added). As interpreted by North Carolina courts, clause (1) of the statute is broader than clause (2), prohibiting a wide range of criminally inappropriate behavior, such as “photographing an unclothed child in a sexually suggestive position, masturbating in front of a child, ... secretly videotaping a child who was undressing,” or engaging a child in sexually explicit telephone conversations. State v. Every, 157 N.C.App. 200, 578 S.E.2d 642, 648 (2003) (citations omitted). Although clauses (1) and (2) overlap, clause (2) identifies and proscribes a narrower crime — -committing lewd or lascivious acts upon or with the body of a child — that is conceptually separate and distinct from the crimes covered by clause (1) and requires a physical act upon or with the body of the victim. The statute thus covers at least two categories of crimes for ACCA purposes — (1) offenses based on the willful commission or attempted commission of a lewd or lascivious act upon or with the body of a child (i.e., violations of § 14-202.1(a)(2)) and (2) all other indecent liberties offenses (i.e., conduct that violates § 14-202.1(a)(l) but not (a)(2)). Accordingly, we may employ the modified categorical approach in this case to determine (1) whether the record reveals which generic crime was the basis for Vann’s convictions and (2) if so, whether that generic crime is a “violent felony,” as defined by ACCA. See Johnson, 130 S.Ct. at 1273; Chambers, 129 S.Ct. at 691; Rivers, 595 F.3d at 564-65; see also United States v. Woods, 576 F.3d 400, 405 (7th Cir.2009) (noting that the modified categorical approach “may be used only to determine which crime within a statute the defendant committed, not how he committed that crime”) (emphasis in original).[1]
*437 In applying the modified categorical approach, we are, of course, limited to considering “conclusive records made or used in adjudicating [a defendant’s] guilt,” which, when the defendant pleads guilty, include “the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information.” Shepard, 544 U.S. at 21, 26, 125 S.Ct. 1254.
Here, the only material in the record before the district court was the presentence report, which provided the following description of the offense underlying Vann’s first indecent liberties conviction:
According to the indictment, on December 17, 1991, Vann willfully did take and attempt to take immoral, improper, and indecent liberties with a child ... for the purpose of arousing and gratifying sexual desire and did commit a lewd and lascivious act upon the body of said child.
J.A. 51 (emphasis added).[2] The presentence report indicated that Vann pleaded guilty to this charge. Although the paragraphs of the presentence report describing Vann’s two other indecent liberties convictions arising from conduct in July 1998 and August 1998, which were also obtained through guilty pleas, simply state that they were based on “court records,” the descriptions of these offenses were materially identical to the first, again tracking the statutory language, and were therefore also undoubtedly based on the charging documents. While Vann’s counsel refused to concede at oral argument that we could properly rely on the presentence report’s descriptions of the charging documents, we have previously recognized that a presentence report, to which the defendant did not object, may be consulted to the extent that its information is derived from Shepard-approved sources. See United States v. Thompson, 421 F.3d 278, 285 (4th Cir.2005) (“The trial judge was entitled to rely upon the PSR because it bears the earmarks of derivation from Shepard-approved sources such as the in *438 dictments and state-court judgments from his prior convictions, and, moreover, Thompson never raised the slightest objection either to the propriety of its source material or to its accuracy”). Moreover, at our request, Vann’s counsel has now provided us with copies of the charging documents and judgments for the three convictions,[3] materials that confirm that Vann pleaded guilty three times to charges of committing, at separate times, a lewd and lascivious act upon the body of a child. The December 1991 charging document included a statement that Vann
did commit and attempt to commit a lewd and lascivious act upon the body of the child named below. At the time of this offense, the child named below was under the age of 16 years and the defendant named above was over 16 years of age and at least five years older than the child. The name of the child is [SLH].
The July 1998 charging document included a somewhat more detailed statement that Vann
did commit and attempt to commit a lewd and lascivious act upon [ENL], a child 13 years of age, the defendant being more than six years older than the child and was not lawfully married to the victim....
The August 1998 charging document included a statement similar to that included in the July 1998 charging document and named the same victim.
The dissent notes that these statements in the charging documents were included in each case with another statement that Vann took “immoral, improper, and indecent liberties with the child named below for the purpose of arousing and gratifying sexual desire,” the alternative element that would also support a violation of the North Carolina statute. Post at 447. It argues that a charging document charging two alternative elements conjunctively must be taken, absent a special verdict, as a conviction on “the lesser of the disjunctive statutory objects.” Post at 447. It reasons therefore that Vann could not be imputed with a conviction on the more serious, violent element charged in the charging document. See post at 446-48.
This argument, however, fails to appreciate the distinction between a jury verdict on a charging document alleging in the conjunctive two alternative elements and a guilty plea. In returning a verdict, the jury can rely on either element to support its finding of guilt, and therefore the verdict cannot necessarily be found to rely on the more serious, violent element. But the modified categorical approach also permits the nature of the prior convictions to be determined by “the defendant’s own admissions” in pleading guilty, and in that case, the admissions determine the nature of the conviction. See Shepard, 544 U.S. at 25, 125 S.Ct. 1254 (plurality opinion). In this case Vann admitted that he committed lewd and lascivious acts upon the bodies of two named children under the age of 16.
Relying on the violations of N.C. Gen. Stat. § 14-202.1(a)(2) (prohibiting a lewd and lascivious act upon or with the body of a child), as indicated by employing the modified categorical approach, we now *439 turn to the question whether willfully committing a lewd or lascivious act upon the body of a child is a “violent felony” within the meaning of 18 U.S.C. § 924(e)(2)(B).
It might be argued, although with some difficulty in light of the Supreme Court’s recent decision in Johnson, that willfully committing a lewd or lascivious act upon the body of a child is a violent felony under the first prong of § 924(e)(2)(B)’s definition of “violent felony,” which requires the offense to “ha[ve] as an element the use, attempted use, or threatened use of physical force.” 18 U.S.C. § 924(e)(2)(B)®. Johnson held that the phrase “physical force” in this clause “means violent force — that is, force capable of causing physical pain or injury to another person.” Johnson, 130 S.Ct. at 1271. The nature of a sex act committed “upon the body of a child,” while not necessarily producing immediate physical pain or injury, arguably causes serious long-term injury to the psyche, which may ultimately manifest itself physically. Indeed, one can conceive of only a few criminal acts that result in such serious and long-lasting injury. Thus, a child, whom the law presumes unable to consent to such an act, is subjected to the “force” of the predator, and the resulting long-term injury may satisfy Johnson’s violence requirement. Cf. United States v. Chacon, 533 F.3d 250, 257-58 (4th Cir.2008) (holding that a sex offense perpetrated in the absence of consent, but which does not have as an element the use, attempted use, or threatened use of physical force, nonetheless constitutes a “crime of violence” under the Sentencing Guidelines by qualifying as a “forcible sex offense”); Pierce, 278 F.3d at 289-90 (same).
But the more readily applicable prong of § 924(e)(2)(B)’s definition of “violent felony” is the second prong, which qualifies a previous conviction when the offense of conviction “involves conduct that presents a serious potential risk of physical injury to another.” 18 U.S.C. § 924(e)(2)(B)(ii). To fulfill this requirement, the crime must be “roughly similar, in kind as well as in degree of risk posed,” to the provision’s example crimes — burglary, arson, extortion, and crimes involving the use of explosives — -all of which “typically involve purposeful, violent, and aggressive conduct.” Begay, 553 U.S. at 143-45, 128 S.Ct. 1581 (internal quotation marks omitted).
After Begay, the Second Circuit in United States v. Daye, 571 F.3d 225 (2d Cir. 2009), addressed whether a defendant’s three prior convictions under a Vermont statute prohibiting sexual assault of a child qualified him for a sentencing enhancement under ACCA. The Vermont statute made it a crime for any person to engage in a sexual act with a person under the age of 16, with an exception for consensual acts between married persons. Applying Be-gay, the Second Circuit held that a violation of the Vermont statute was categorically a violent felony under § 924(e)(2)(B)(ii). It found “that a sexual act inflicted upon a child by an adult ordinarily creates a serious potential risk of physical harm to the child,” reasoning that “the nature of the conduct and the child’s relative physical weakness give rise to a substantial likelihood that the adult may employ force to coerce the child’s accession.” Id. at 232. The court also found that the Vermont offense was sufficiently similar in kind to § 924(e) (2) (B) (ii)’s example crimes to satisfy Begay. The court acknowledged that the offense imposed strict liability with regard to the age of the victim but nonetheless concluded that it typically involved purposeful conduct because the crime, by its terms, “involves deliberate and affirmative conduct — namely, an intentional sexual act with a person who is, in fact, under the age of consent.” Id. at 234. Finally, the court concluded that a typical violation of the Vermont *440 statute was sufficiently violent and aggressive to satisfy Begay:
[C]rimes involving sexual contact between adults and children create a substantial likelihood of forceful, violent, and aggressive behavior on the part of the perpetrator because a child has essentially no ability to deter an adult from using such force to coerce the child into a sexual act. Such likely use of force not only creates a risk of injury to the victim, but also establishes that the perpetrator will commonly act in a purposeful, violent, and aggressive manner. At a minimum, we have no doubt that a typical instance of this crime will involve conduct that is at least as intentionally aggressive and violent as a typical instance of burglary.
Id. But see United States v. McDonald, 592 F.3d 808, 814 (7th Cir.2010) (holding that the felony of having sexual contact or intercourse with a person under the age of 16 is not a crime of violence for purposes of the Sentencing Guidelines after reasoning that the offense is a strict-liability crime because “no mens rea is required with respect to the age of the victim”); United States v. Christensen, 559 F.3d 1092, 1095 (9th Cir.2009) (holding that a conviction for statutory rape — involving sexual intercourse with a child between the ages of 14 and 16 when the perpetrator is at least 48 months older — is not categorically a violent felony under ACCA because “it does not necessarily involve either ‘violent’ or ‘aggressive’ conduct”).
Inasmuch as Daye focuses on crimes that “typically involve purposeful, violent, and aggressive conduct,” see 571 F.3d at 234 (alteration omitted) (quoting Begay, 553 U.S. at 14445, 128 S.Ct. 1581) — an analysis not employed by the courts in McDonald and Christensen — we find Daye more persuasive. Its analysis faithfully applies the Supreme Court’s decisions in Begay and James v. United States, 550 U.S. 192, 127 S.Ct. 1586, 167 L.Ed.2d 532 (2007).
In James, the Supreme Court held that a violation of Florida’s attempted burglary statute was a violent felony under § 924(e)(2)(B)(ii). In reaching its holding, the Court stressed that the categorical approach does not “requir[e] that every conceivable factual offense covered by a statute must necessarily present a serious potential risk of injury before the offense can be deemed a violent felony.” Id. at 208, 127 S.Ct. 1586. Indeed, the Court observed, the crimes specifically listed in § 924(e)(2)(B)(ii), which “provide a baseline against which to measure the degree of risk that a nonenumerated offense must ‘otherwise’ present,” could not even meet that standard. Id. It noted that one could imagine a burglary in the form of “a break-in of an unoccupied structure located far off the beaten path and away from any potential intervenors” or “an extortion scheme where an anonymous blackmailer threatens to release embarrassing personal information about the victim unless he is mailed regular payments,” neither of which would pose “a realistic risk of confrontation or injury to anyone.” Id. at 207-08, 127 S.Ct. 1586. The Court thus concluded that “the proper inquiry is whether the conduct encompassed by the elements of the offense, in the ordinary case, presents a serious potential risk of injury to another.” Id. at 208, 127 S.Ct. 1586 (emphasis added). This is also what Begay concluded.
In Begay, the Court, while holding that a violation of New Mexico’s statute prohibiting driving under the influence of alcohol did not constitute a violent felony, explained that a qualifying offense must be “roughly similar[ ] in kind” to the example crimes listed in § 924(e)(2)(B)(ii), all of which “typically involve purposeful, violent, and aggressive conduct.” 553 U.S. at *441 143-45, 128 S.Ct. 1581 (emphasis added) (internal quotation marks omitted). That the example crimes are typically marked by such conduct is significant, the Court stressed, because that kind of behavior “makes [it] more likely that an offender, later possessing a gun, will use that gun deliberately to harm a victim.” Id. at 145, 128 S.Ct. 1581.
Critically, just as James does not require “that every conceivable factual offense covered by a statute ... necessarily present a serious potential risk of injury before the offense can be deemed a violent felony,” 550 U.S. at 208, 127 S.Ct. 1586, Begay does not require that all conduct that represents a violation of the statute be purposeful, violent, and aggressive for the crime to qualify as a violent felony. Indeed, it is self-evident that the example crimes themselves may be committed in ways that are not purposeful, violent, and aggressive. What matters is that the offense, in a manner “roughly similar” to arson, burglary, extortion, and the unlawful use of explosives, “typically involves purposeful, violent, and aggressive conduct,” so that a conviction for that offense tends to “show an increased likelihood that the offender is the kind of person who might deliberately point [a] gun and pull the trigger.” Begay, 553 U.S. at 143-46, 128 S.Ct. 1581 (emphasis added) (internal quotation marks omitted).
Applying these principles to the relevant provision here, we are satisfied that the North Carolina offense of taking indecent liberties with a child by willfully committing a lewd or lascivious act upon or with the body of the child, in violation of N.C. Gen.Stat. § 14-202.1(a)(2), is “a violent felony” under § 924(e)(2)(B)(ii). First, as we recognized in Pierce, conduct that violates this provision will, in the ordinary case, present a potential risk of physical injury to the child that is at least as serious as the risk facing a victim of arson or burglary. See Pierce, 278 F.3d at 290 (“[C]hild abuse by an adult ... presentís] a serious potential risk of physical injury to the child, a danger that is quite similar in character to the potential injury to persons involved in arson or burglary, both of which are specifically recognized as crimes of violence”). Moreover, the offense is “roughly similar, in kind,” to arson, burglary, extortion, and the unlawful use of explosives in a way that the crime of driving under the influence at issue in Begay was not, and we readily conclude that the typical instance of a defendant willfully committing a lewd or lascivious act upon or with the body of a child who is under the age of 16 and at least 5 years younger than the defendant involves purposeful, violent, and aggressive conduct. Indeed, review of North Carolina decisions applying the statute reveals that a large number of violations involve the use of horrific force. See, e.g., State v. Rhodes, 321 N.C. 102, 361 S.E.2d 578, 579 (1987) (defendant had sexual intercourse with a 10-year-old girl and threatened to kill her, her mother, and her brother if she told anyone what he had done); State v. Ridgeway, 185 N.C.App. 423, 648 S.E.2d 886, 889-90 (2007) (defendant bit, raped, sodomized, and murdered a 14-year-old girl); State v. Jones, 99 N.C.App. 412, 393 S.E.2d 585 (1990) (defendant repeatedly had sexual intercourse with his step-daughter, threatened to kill her, and choked her). This is no surprise since, given the age differential and the resulting power disparity between the defendant and the child, the offense will naturally tend to involve coercive conduct that can readily escalate to physical violence. Accordingly, we conclude that willfully committing a lewd or lascivious act upon the body of a child, in violation of N.C. Gen.Stat. § 14-202.1(a)(2), satisfies Be-gay’s standard and qualifies as a “violent felony” under § 924(e)(2)(B)(ii).
*442 Vann relies heavily on our holding in Thornton to argue otherwise. In that decision, we held that Virginia’s carnal knowledge offense, which makes it a crime to “carnally know[], without the use of force, a child thirteen years of age or older but under fifteen years of age,” Va.Code Ann. § 18.2-63 (emphasis added), does not qualify as a violent felony under ACCA, as interpreted by Begay. Thornton, 554 F.3d at 444. Although Virginia’s carnal knowledge offense overlaps to some extent with North Carolina’s indecent liberties offense, important and material differences exist that distinguish Thornton. Most notably, the Virginia offense is, by its own terms, committed “without the use of force,” while the North Carolina crime is not so limited. Indeed, as we have noted, the North Carolina crime tends to involve coercive conduct that can readily escalate to physical violence. Additionally, the Virginia statute only covers sexual contact with young teens who are 13 and 14 years old, while the North Carolina statute protects all children, including society’s youngest. The North Carolina statute also requires that the defendant be at least 16 years old and at least 5 years older than the child, while the Virginia statute only takes the defendant’s age into account to lessen the punishment if he is a minor and the child in fact consented. See Va.Code Ann. § 18.2-63(B). The result of these differences is that a typical violation of the North Carolina statute is much more likely to be marked by violent and aggressive conduct than an ordinary violation of the Virginia statute considered in Thornton, and therefore it qualifies as a violent felony under ACCA, even though Virginia’s carnal knowledge offense does not.
For the reasons given, we affirm the judgment of the district court.

AFFIRMED

. In concluding that the modified categorical approach is not appropriate, the dissent determines that violating North Carolina’s indecent liberties statute constitutes a single offense, even though it also concedes that the statute provides “disjunctively two alternative means of proving one element of the offense.” Post at 444 (quoting Jones, 616 S.E.2d at 20). This describes precisely the circumstance that allows for application of the modified categorical approach. In Johnson, the Supreme Court considered a statute that punishes the offense of “simple battery,” the elements of which required either "actually and intentionally touching] another person” or "intention *437 ally caus[ing] bodily harm to another person,” stated in the disjunctive. The Court noted that the single offense of simple battery could be violated by satisfaction of either one of the two disjunctive elements. See Johnson, 130 S.Ct. at 1269-70. Recognizing that a violation of one of the disjunctive elements would not be considered a violent felony, the Court held that it was appropriate to employ the modified categorical approach "to determine which statutory phrase was the basis for the conviction.” Id. at 1273.
As in Johnson, the North Carolina statute for indecent liberties has two alternative elements, one of which, as we hold below, constitutes a violent felony. Accordingly, we are permitted to apply the modified categorical approach to determine which was the basis for the convictions. In this case, that determination is made on the basis of Vann's guilty pleas during which he pleaded guilty to both elements of the offense as charged, including the one that constitutes a violent felony.

. The dissent reasons that because the charging document charges Vann with a violation of both disjunctive elements of the North Carolina indecent liberties statute, it does not necessarily charge a violation of the element constituting a violent felony. Post at 446-47. But that argument misses the point in the context of this case because Vann pleaded guilty to a violation of both elements thus admitting that he "did commit and attempt to commit a lewd and lascivious act upon the body of” a named child under the age of 16. When a defendant makes admissions supporting the conviction for a violent felony, the admissions may be relied on in lieu of the facts inherent in the statutory offense. See Shepard, 544 U.S. at 19, 125 S.Ct. 1254 (noting that “guilty pleas may establish ACCA predicate offenses”); id. at 25, 125 S.Ct. 1254 (plurality opinion); United States v. Alston, 611 F.3d 219, 225-26 (4th Cir.2010).

. Although Vann’s counsel requested an opportunity to submit supplemental briefs on the question of whether we can consider state charging documents not made part of the record in the district court, we conclude that the issue has been resolved in our circuit. See Lolavar v. de. Santibanes, 430 F.3d 221, 224 n. 2 (4th Cir.2005) (taking "judicial notice of the records of a court of record”); Colonial Penn Ins. Co. v. Coil, 887 F.2d 1236, 1239 (4th Cir.1989) (noting that courts of appeals may properly take judicial notice of state court proceedings that were not part of the record before the district court).